UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES L.,[1]

                                 Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

DECISION & ORDER

22-CV-0397MWP

## PRELIMINARY STATEMENT

Plaintiff James L. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits and Supplemental Security Income ("DIB/SSI").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 9).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 7, 8).  For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 1, 2020, the alleged onset date. (Tr. 18).[2] At step two, the ALJ concluded that plaintiff had the severe impairments of "bilateral shoulders, degenerative and spondylosis in the neck and back, adjustment disorder, PTSD, left ankle and bilateral feet degeneration and arthritis of the bilateral hips." (*Id.*). The ALJ concluded that plaintiff also suffered from other impairments that were not severe. (Tr. 18-19). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 19-20).

The ALJ concluded that plaintiff retained the RFC to perform light work with certain limitations. (Tr. 20-22). Specifically, plaintiff was unable to reach above shoulder height and was limited to only frequent balancing, kneeling, crouching and crawling and occasional stooping and climbing ramps, stairs, ladders, ropes and scaffolds. (*Id.*). Additionally, plaintiff could perform work in a low-stress work environment requiring minimal change in work routine

---

[2] The administrative transcript (Docket # 4) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

and process, occasional interaction with others, and no supervisory duties, independent decision-making or strict production quotas. (*Id.*).

At steps four and five, the ALJ found that plaintiff was unable to perform his past relevant work but that other jobs existed in the national economy that plaintiff could perform, including the positions of mail sorter, price marker, and electronics assembler. (Tr. 22-23). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 23-24).

### III.    Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 7-1). First, plaintiff maintains that the ALJ erred by failing to consider his need for a cane when formulating his RFC. (*Id.* at 16-20). Next, plaintiff contends that the ALJ improperly assessed the medical opinions of record. (*Id.* at 20-23). Additionally, plaintiff argues that the ALJ mischaracterized the record when evaluating the consistency of plaintiff's subjective complaints and symptoms with the record. (*Id.* at 23-25). Finally, plaintiff maintains that the ALJ erred at step five by relying on the vocational expert's testimony without first resolving an inconsistency between that testimony and the Dictionary of Occupational Titles.[3] (*Id.* at 25-28).

### IV.    Analysis

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d

---

[3] Plaintiff's challenges relate to his physical impairments, and plaintiff does not challenge any portion of the ALJ's determination relating to his mental limitations. Therefore, the Court will limit its analysis and discussion of the relevant medical evidence to plaintiff's physical impairments.

45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

      Plaintiff maintains that the ALJ committed reversible error by failing to consider his need to use an assistive device – specifically, a cane – when formulating the RFC.  (Docket # 7-1 at 16-20).  Social Security Ruling 96-9p recognizes that the use of a hand-held assistive device, in some instances, may significantly erode the occupational base for individuals who must use such devices.  *See* SSR 96-9p, 1996 WL 374185, *7 (July 2, 1996).  Pursuant to this ruling, where the record suggests that a plaintiff requires the use of an assistive device to stand or walk, the ALJ should determine whether the device is "medically required."[4]  *Id.*  "Plaintiff bears the burden to establish medical necessity."  *Vanever v. Berryhill*, 2018 WL 4266058, *2 (W.D.N.Y. 2018).

      For a device to be considered "medically required," there must be "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing."  SSR 96-9p, 1996 WL 374185 at *7.  Additionally, the documentation must describe

---

[4] Social Security Ruling 96-9p provides policies for assessing an individual's ability to do other work where he or she has been determined to retain the RFC for less than the full range of sedentary work.  *See* SSR 96-9p, 1996 WL 374185.  Both parties assume that the ruling is applicable here, where plaintiff was determined to retain the capacity to perform a range of light work, which by definition involves higher exertional capabilities.

"the circumstances for which [the device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.* "Once medical need for an assistive device has been established, the ALJ must incorporate that device into the RFC." *Vanever v. Berryhill*, 2018 WL 4266058 at *2. Thus, "when there is medical documentation about [an assistive device] in the record, an ALJ's failure to determine whether [that device] is medically necessary or to incorporate the use of [that device] into the RFC is legal error." *Charles F. v. Comm'r of Soc. Sec.*, 2021 WL 963585, *4 (W.D.N.Y. 2021).

The record contains several references to plaintiff's use of a cane. In an Adult Function Report completed on September 10, 2020, plaintiff reported that he used a medically prescribed cane "all the time." (Tr. 330-31). In a similar form completed by plaintiff's friend, she reported that plaintiff used a walker and a cane, both of which were prescribed by medical doctors. (Tr. 334, 340). According to the friend, plaintiff required the cane to walk, stoop, bend, and for balance. (*Id.*).

The medical records suggest that on September 5, 2020, plaintiff requested that his physical therapist prescribe him a cane for walking. (Tr. 535). In response, the therapist advised plaintiff to consult his primary care physician. (*Id.*). The therapist also advised that if the physician placed an order for a walking aid, the therapist's office would schedule an appointment with plaintiff to demonstrate its use. (*Id.*). On September 8, 2020, plaintiff requested that his primary care physician prescribe him a walking cane due to pain in his left hip and knee. (Tr. 532, 535).

Treatment notes suggest that plaintiff attended an appointment with his physical therapist on September 30, 2020, at which time "an adjustable height straight cane" was issued to plaintiff. (Tr. 710). During the appointment, plaintiff "was instructed in all aspects of

ambulation with straight cane on level surfaces and stairs." (*Id.*). During a medical appointment with his primary care physician on October 15, 2020, plaintiff reported that he used a cane when walking, which helped to alleviate his pain. (Tr. 703).

On October 14, 2020, state consulting physician Nikita Dave, MD, completed an internal medicine examination of plaintiff. (Tr. 582). Plaintiff reported that he used a cane primarily for "prolonged standing and walking" due to a shooting pain in his left medial thigh and that the cane had been prescribed to him two years earlier. (Tr. 584). Dave noted that plaintiff did not need the cane for "in-room mobility and transfers." (*Id.*). During the administrative hearing, plaintiff testified that he was limited in his ability to walk and stand, but did not mention his use of a cane, nor did the ALJ ask plaintiff any questions relating to his use of a cane. (Tr. 55-56, 62).

The ALJ determined that plaintiff retained the RFC to perform the walking, standing, carrying, and lifting requirements of light work. (Tr. 20). Light work involves "a good deal of walking or standing or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Specifically, because light work requires frequent lifting or carrying of objects, it requires the ability to be on one's feet for up to six hours of an eight-hour workday. *See* SSR 83-10, 1983 WL 31251, *6 (Jan. 1, 1983); *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) (summary order) ("[l]ight work requires the ability to . . . stand and walk for up to 6 hours a day"). Although the use of a cane may not necessarily preclude light work, the use of a cane certainly suggests that an individual may have some restrictions with walking, standing, lifting, and carrying. *See Debbie I. v. Comm'r of Soc. Sec.*, 2020 WL 6866378, *4 (W.D.N.Y. 2020) ("[t]his is not harmless error because [p]laintiff's need to use a cane to balance may interfere with her ability to perform light work while standing and

holding a cane"); *Johnson v. Berryhill*, 2019 WL 1430242, *9 (D. Conn. 2019) ("[t]he use of a cane, however, is not dispositive of a claimant's ability to do light work, though it might trigger the ALJ's duty to further develop the record with regard to the claimant's limitations"). Indeed, the pertinent ruling recognizes that use of an assistive device may significantly erode the occupational base for even sedentary work and suggests that a vocational expert should be consulted when an assistive device is determined to be medically necessary. *See* SSR 96-9p, 1996 WL 374185 at *7 ("it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work").

    Despite the references in the record to plaintiff's use of a cane, the ALJ's decision does not mention plaintiff's cane use, much less determine whether such use was medically necessary. I agree with plaintiff that the ALJ's failure to determine whether plaintiff's use of a cane was medically necessary was reversible error and that remand is warranted on this basis. *See Terrence F. v. Comm'r of Soc. Sec.*, 2022 WL 1203074, *6 (N.D.N.Y. 2022) ("the ALJ committed legal error by failing to determine whether a cane is medically necessary, despite the medical documentation of record establishing its need"); *Charles F. v. Comm'r of Soc. Sec.*, 2021 WL 963585 at *4 ("the ALJ did not ask [plaintiff] about his cane use or otherwise seek clarification about [plaintiff's] ability to walk or balance unassisted[;] . . . the ALJ not only failed to address whether [plaintiff] needed a cane, he also failed even to consider how a cane might impact [plaintiff's] RFC"); *Gregory F. v. Comm'r of Soc. Sec.*, 2020 WL 7166738, *5 (W.D.N.Y. 2020) ("[the ALJ] neither used the medical records and opinion to evaluate whether [plaintiff] needed a cane nor incorporated [plaintiff's] use of a cane into the RFC[;] . . . the failure to do one or the other was . . . error"); *Scott v. Berryhill*, 2018 WL 4442882, *6 (W.D.N.Y. 2018) (remanding where "[t]he ALJ made no further mention of [p]laintiff's cane in

9

the decision, failing to include either an explicit finding as to whether the cane was medically required or any accommodations related to [p]laintiff's cane use in the RFC finding").

I reject the Commissioner's argument that remand is not warranted. The Commissioner maintains that remand is not justified because the evidence relating to cane use contained in the record is insufficient to satisfy plaintiff's burden of demonstrating that his use of a cane was medically necessary. (Docket # 8-1 at 12-15). According to the Commissioner, the record demonstrates that shortly after applying for DIB/SSI, plaintiff requested a prescription for a cane and, although he was prescribed a cane by his medical providers, the consulting physician observed during an evaluation a few weeks later that plaintiff did not rely upon the cane to ambulate in the room or perform transfers. (*Id.*). Moreover, according to the Commissioner, there is little evidence in the record that plaintiff received any ongoing treatment for his back, knee, or hip impairments, and plaintiff never mentioned his use of a cane during the administrative hearing. (*Id.*).

As an initial matter, the fact that the cane was prescribed at plaintiff's request is not dispositive of whether the cane was medically necessary. *See Rowe v. Berryhill*, 2018 WL 4233702, *4 (W.D.N.Y. 2018) ("[i]nsofar as the ALJ suggested [p]laintiff's use of a cane lacked legitimacy because [p]laintiff proactively requested the cane to assist with his ambulation, the fact remains that his treatment provider supplied a valid prescription to [p]laintiff for its use[;] [m]oreover, a cane need not be prescribed to be considered medically necessary") (internal quotations omitted). In any event, although I agree that the evidence cited by the Commissioner with respect to plaintiff's cane use is certainly relevant to a determination of whether plaintiff's cane was medically necessary, that determination must be made by the ALJ in the first instance, not this Court. *See Gregory F. v. Comm'r of Soc. Sec.*, 2020 WL 7166738 at *5 ("[the reasons

provided by the Commissioner] may well have supported a finding that [plaintiff's] cane was not medically necessary[,] [b]ut they are missing from the ALJ's decision[;] [i]t is a foundational principle of administrative law that the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based") (internal quotations and brackets omitted); *Debbie I. v. Comm'r of Soc. Sec.*, 2020 WL 6866378 at *4 ("[t]he Commissioner now cherry picks evidence from the record suggesting that [p]laintiff may not need a cane[;] [t]his is an impermissible *post hoc* rationalization"); *see also Charles F.*, 2021 WL 963585 at *4 ("[b]ecause the ALJ did not make an explicit finding about [plaintiff's] use of a cane, this [c]ourt does not know whether the ALJ failed to consider the evidence about a cane; found that a cane was not medically necessary; found that a cane was medically necessary but did not impact [plaintiff's] RFC; or reached some other conclusion").

It is possible that the ALJ overlooked the record evidence relating to plaintiff's use of a cane, particularly because the plaintiff did not mention it during the administrative hearing. Of course, plaintiff was not represented during the hearing, and the ALJ did not ask him whether he used any assistive devices. Irrespective of the reason for the ALJ's failure to address plaintiff's cane in his decision, for the reasons discussed above, the references in the record to plaintiff's use of a cane were sufficient to require the ALJ to determine whether plaintiff's cane was medically necessary, including developing the record if necessary. On remand, the ALJ should properly evaluate whether plaintiff's use of a cane is medically necessary and, if it is, to incorporate plaintiff's use of a cane into his RFC.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 8)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 7)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                      *s/Marian W. Payson*
                                                    MARIAN W. PAYSON
                                              United States Magistrate Judge

Dated: Rochester, New York
          September 1, 2023